Mr. Van Ostrin. Good morning Judge. Good morning. Judge Grunder, Judge Strauss, Judge Arnold, and may it please the court. In this section section 1983 action arising from prisoner abuse by Arkansas Department of Corrections staff, the district court erred when it failed to consider or even acknowledge evidence in support of Ms. Prowse's successful exhaustion of the administrative grievance procedure. Simply put, there is a dispute among the parties as to which was the first filed grievance appeal. That is a genuine dispute as of material fact and Ms. Prowse's position is supported by both documentary evidence and her own sworn statement that she completed all levels of the grievance appeal. Because the district court discarded that evidence and instead viewed the facts in the most favorable to the moving party, it erred and this court should reverse. I'll begin with what the parties agree on. In 2019, on July 16th and July 25th respectively, Ms. Prowse successfully completed steps 1 and 2 of the ADC inmate grievance procedure with regard to an event that occurred on July 9th. Then, on August 14th, the parties also agreed that Warden Gibson issues issued his decision denying relief to Ms. Prowse. But this is where the timelines diverge. Ms. Prowse maintains and has always maintained that on August 16th of 2019, she submitted a perfected appeal including all necessary attachments in accordance with the grievance procedure. The very best evidence of this is that form itself and the date that Ms. Prowse put on it. 8-16-2019 and that's in the Why isn't her sworn statement enough evidence of that? Well, Judge Arnold, I think her sworn statement certainly could be. The sworn statement arose in the context of the complaint that she filed and that's on page 10 and 13 of the Joint Appendix. She makes a legal statement that she exhausted all available remedies, but also... That's a statement of fact, is it not? I believe it is, Judge Arnold, because she also... So why isn't that enough right there? Forget about all the male mix-up stuff. Your Honor, I think that absolutely could be enough and based on this court's precedent in cases as recent as Boyd against Doe, that certainly is enough. When an inmate makes a sworn statement that they completed all necessary grievance steps, even when there's evidence to the contrary in the record, summary judgment is not proper. But in this case, there's even more than that because there is this documentary evidence and the date that Ms. Prowse put on the form. So again, I would direct the court to the record at page 224, where that dated form exists. That date, August 16th, 2019, was never acknowledged by the District Court and is never acknowledged by my friend on the other side in either their briefing to the District Court or to this. Now, six days after submission of that form, Ms. Prowse still had not heard back from ADC officials. According to the grievance procedure, within five days, she should have received confirmation of receipt. The ADC has 30 days to issue a decision, but only five days to confirm that they received the successful appeal. Not having heard from them on the sixth day, Ms. Prowse was frustrated. She took a carbon copy form and she wrote on that form the date, 8-22-2019, which is six days later. She also wrote on that form, no response. I still fear for my safety. It was that form that five days later, the ADC stamped as received on 8-27, and they said that because it did not include the necessary attachments, she did not successfully appeal. But that was not her attempted appeal. Mr. Van Ostrom, is there any explanation in the record about why the one document dated August 22nd was stamped received August 27th, and then the other one was a day later? There's no explanation in the record for that, Your Honor. I think the fact that there's no explanation for that in the record is a big problem, especially on a summary judgment standard where we have to construe the facts in a light favorable to the non-moving party. Your Honor, my recollection is that in the district court, the client asserted that the documents were false. Is that something that you're still relying on, on appeal? Judge Arnold, Ms. Prowse stated that the documents were false replicas. I think when we construe the pleadings liberally for pro se plaintiffs, which of course is what this court will do, I think what Ms. Prowse was trying to express was that what the ADC viewed as that initial incomplete appeal was not the perfected and completed appeal that she had submitted. At least those words are consistent with that theory, I guess. Her assertion that the documents were false, I guess, consistent with your theory, but it wasn't specifically advanced in the district court, was it, the male mix-up theory? Your Honor, I think that, again, the false replica statement, while it may be inartfully stated, was Ms. Prowse's attempt to explain what happened here, that this was not the correct document that ADC viewed as the perfected appeal. I think that, frankly, Ms. Prowse may have been confused as to what happened. She knew that she had timely submitted a perfected appeal, including all necessary attachments, and she received a rejection on August 27th of the carbon copy form, and a day later, on August 28th, received back the perfected appeal, supposedly rejected because it was a duplicate. I think Ms. Prowse may not have fully understood exactly what happened, and indeed, even with the benefit of a full record, as Judge Grunder's question just acknowledged, there really is no explanation for why the first submitted document was not the first document stamped received. There seems to be some contradiction between the government's position that there was no attachment three, on the one hand, and the assertion, on the other hand, that there was an attachment three that was incomplete. Precisely, Your Honor. That's exactly right, Judge Arnold. The form that ADC issued, the rejection form of the appeal, does not have the appropriate box checked for no attachment three. Instead, it has a box checked for incorrect attachment three. It's absolutely not consistent. Also, it seems to me, I think I did the arithmetic right. This would have been too late anyway, as an appeal, by a day, but it wasn't rejected on that ground. Isn't that right? Exactly right, Judge. If, in fact, it had truly not been received until August 27th, it would have been an untimely appeal, but that box was not checked either. So, ADC's own explanation is not consistent with its own documentary evidence in this case. I'm sorry to go back to my original question, but forget about the documents for a moment. She says she did it, and the documents might say she didn't. Do you have to engage in what's called a counterfactual fantasy to say that there's a dispute here? Judge, I don't think we necessarily have to do that. Again, I think on the basis of her sworn testimony alone, again, in the joint appendix at 10 and 13, according to this court's precedent, as recently stated in Boyd v. Doe, it is sufficient to reverse the district court on those grounds alone. But I think this is, again, just a much stronger case than that, because the record is replete with this documentary evidence that is consistent with Ms. Krause's explanation. Okay, thank you. Do you have any idea, counsel, if we reverse and take your view of the case, what it'll look like on remand? And the reason why I ask that is there's not much precedent on what the district court's supposed to do if there's a genuine issue on exhaustion. The Ninth Circuit says that's a matter for the court, and the court needs to hold a trial. I didn't find any precedent in our circuit. It seems like it's a separate proceeding than the full trial, and it's not something for the jury. Do you have any clue as to what would happen on remand? Well, Judge Stress, this was, frankly, the first motion that was filed in this case. There's been hardly any discovery on any issue, exhaustion or otherwise, in this case. At the end of the day, non-exhaustion is an affirmative defense. It would be the defendant's burden to prove that. And I believe I have seen cases within this circuit, although perhaps not within this court, where there has been some evidence presented on that, some sort of trial on that issue. But I could be incorrect about that, Judge Stress. But I think that that would be an appropriate way to conduct the proceedings, if that's what the court decides is necessary. Again, Your Honor, we're here on summary judgment, where I think as a matter of summary judgment, clearly this case merits a reversal. The last piece of evidence that I just would like to draw the court's attention to is the declaration of Terry Grigsby, who is the inmate grievance coordinator. That declaration was almost the sole piece of evidence submitted in support of summary judgment in this case. But I think it's notable, and I want to make sure that the court takes note, that Ms. Grigsby never actually testifies or swears as to when any document was received by ADC. All she says is that the document, the appeal rather, was rejected on the 27th of August. But that alone, even if it weren't contradicted by the factual record or by Ms. Prowse's testimony, and it is, but that alone would not be a sufficient fact in order for the court to have granted summary judgment in this case. So again, when we look at what this court did in cases like Townsend against Murphy, in cases like Boyd against Doe, we have a much stronger record here, because there's documentary evidence, there's Ms. Prowse's own sworn testimony. This is a case about very serious prisoner abuse, and the defendants have never taken the tack. They've never denied what happened. They've never tried to take a factual position on this case. In fact, one of Ms. Prowse's supposedly duplicative grievances was to preserve video evidence that might exist in this case. Instead, they've rested solely on this defense of non-exhaustion. That defense simply has not been proven. There is a genuine dispute as to material fact with regard to that defense, and for that reason, we urge this court to reverse, and I'll reserve the remainder of my time for rebuttal if there are no further questions. Mr. Van Ostrand, one further question, at least one. Do you concede that the only grievance that's properly before us is this primary grievance? No, Your Honor. I believe the other grievances were properly exhausted, and in fact, they've been rejected as duplicative. They're also not the subject matter of the underlying lawsuit, are they? Well, I think that they do speak to the subject matter of the underlying lawsuit, Your Honor. One reason that this case is very different, for example, than this court's decision in the Muhammad case, which I anticipate opposing counsel might bring up, is that in that case, the issues had crystallized. The case had proceeded to trial. Again, this case is still in its infancy. This motion for summary judgment was the very first document filed by opposing counsel. The other grievances in this case have to do with preservation of video evidence, have to do with perceived retaliation. Those grievances certainly could also support the allegations in this lawsuit. So again, I think that those are also a possible basis for exhaustion, but I don't think the court needs to get to those because the evidence that this primary grievance was exhausted is so strong. Thank you. Very well. Thank you, Mr. Van Ostrand. The court will hear from the State. Ms. Guest. You'll need to unmute your microphone, please. I apologize about that. Good morning. May it please the court. I'm Senior Assistant Attorney General Kat Hodge Guest, and I represent the Appalese, Walter Washington, and Ned Butler, who are officers with the Arkansas Division of Correction. After refusing several direct orders, which required officers to take affirmative steps to restore safety and security and order to the prison, Ms. Prouse filed or submitted five different grievances about decidedly different issues related to the July 9th incident. Only one of the grievances, grievance number 1969, which we've referred to as the primary grievance, deals expressly with the underlying legal issue in this case, which is excessive force. The secondary issues do not address that specific issue, and under this court's holding in Muhammad v. Mayfield could not have possibly exhausted Ms. Prouse's claim of alleged excessive force because exhaustion is mandatory and well-established by not only this court's precedent, but the United States Supreme Court precedent. When Ms. Prouse failed to follow the ADC's specific guidelines for exhaustion of administrative remedies, then she failed to satisfy the PLRA and the district court correctly granted summary judgment in favor of the defendants. Additionally, this court need not address whether or not the ADC's grievance procedure is available or unavailable under the decision in Ross, because Ms. Prouse only raises that argument with respect to the secondary grievances, and those grievances do not relate specifically to excessive force, and so it's immaterial whether or not the ADC's grievance procedure was available with respect to those grievances. Alternatively, the record demonstrates that Ms. Prouse's refusal to comply with the ADC's policy rather than the unavailability of the ADC's grievance procedure was the result of the dismissal or resulted in the dismissal in this case. I want to turn first to the primary grievance, grievance number 1969. It is well settled that inmates are required to exhaust the administrative remedies properly, and this exhausted her administrative remedies, and under the ADC's grievance procedure of 1614, Ms. Prouse had four obligations that she failed to comply with in order to fully exhaust grievance number 1969. She needed to submit an original copy of attachment one. She needed to submit attachment three, which was the ward's decision. She needed to date sign that document and include her ADC number, and it needed to be received by the ADC's deputy director's office responsible for inmate grievance appeals. In this case, the record clearly demonstrates that the ADC did not receive a complete inmate grievance appeal on August the 27th. Ms. Prouse takes the position that she did not appeal her grievance until August the 28th, but this court should reject that argument for several reasons. Well, counsel, wait a second. So you say the evidence or the record clearly shows that. I think that maybe I'm wrong about this, but the only thing that clearly shows that is the received date, right, the timestamp, and we have a genuine issue of material fact over whether that timestamp is correct. Is there anything else in the record you can point to that clearly shows that the appeal was incomplete on that first day? That is that those are the documents that I'm referring, and respectfully, Your Honor, there is, there can be no dispute about whether or not those documents were received on August the 27th when this court does not have to credit Ms. Prouse's statements. Otherwise, when the record clearly indicates, doesn't have to accept her version of the events, when it contradicts the record, and that is what the court looks at here, the record in this case, and the record demonstrates that those documents were stamped on August 27th. The Department of Corrections, though, made a mistake. You know, one of the appeals gets stuck under another piece of paper, and they find it on that later date, and they stamp it on that date. I mean, isn't that at least conceivably possible? It is conceivable, but the record doesn't demonstrate that there's any reason to draw that conclusion, respectfully, Judge Strauss. Well, doesn't it, in part, because it's dated August 16th? And I believe Prouse's affidavit says that she submitted it on August 16th. It's dated August the 16th, but that's, you know, we look at when the ADC received the grievance appeal, and so they received it on August the 27th. The date that she sent it and when she received it is not the issue. The issue here is when the ADC received that document, it didn't. Isn't there a difference between when it was received and when it was stamped received, which is similar to Judge Strauss's question? In other words, it could have been sitting there, they could have received it, but it could have been hiding under another piece of paper and wasn't stamped when it was actually received. I will acknowledge there is a difference, but the record doesn't support that conclusion. What Ms. Prouse says is, I dated it August 16th and I submitted it, and there is nothing in the record that indicates that the ADC received it on the 16th and it was hiding under a document and wasn't stamped received until 10 days later. What the record indicates is that when you read the record, both looking at the documents and Ms. Grigsby's affidavit, that those documents were received in the ADC's office on the 27th. And it's not just the stamp, there is on Appley's supplementary addendum that there is a date that is, you know, both the stamp and the date on the documents indicate that they were received in the ADC's office on August the 27th. I want to draw the court's attention to another problem with this her true appeal was not submitted until August 28th. And the court asked about this initially, Ms. Prouse did not make that argument in the district court. This court should not consider that argument because it's presented for the first time on appeal. In the district court, Ms. Prouse asserted that these documents were, she didn't submit these documents, that they were false replicas. Before this court, she has shifted that position to suggest that the documents received on August 27th were a status update. And there is no provision in the ADC's inmate grievance procedure that allows an inmate to initiate a partial appeal or an improper appeal, and then label it a status update so that she could receive two or three bites at the agreement appeal process. The ADC had every reason to rely on the first received documents as Ms. Prouse's attempt to appeal that grievance. And because she didn't comply with the ADC's policy, then those documents that appeal was properly rejected. If the court were to reverse and remand this case on that position, what it would be doing respectfully is creating a judicial exception for inmates who fail to follow the policy, label that improper attempt to exhaust as a status update or something else, and create a judicially, a judicially created exception to the ADC's grievance procedure. And the United States Supreme Court has said those types of exceptions or consideration of special circumstances is simply not allowed. Ms. Prouse knew what the steps for exhausting a grievance were. She did not attach the correct documents. And according to the ADC's grievance procedure, she failed to properly exhaust. I want to address another issue and that is whether or not the box indicating that she failed to properly complete the document. That's a red herring. The document, the rejection document indicates first and foremost that Ms. Prouse's grievance is being rejected because she failed to submit the correct attachments. And so under both of those circumstances, Ms. Prouse would not have properly exhausted her administrative remedies under the ADC's grievance appeal process. I want to turn next to the second issue regarding the secondary issues because the court asked Ms. Prouse's counsel whether or not those grievances, if the real issue in this case was the exhaustion of grievance number 1969. This court's decision in Muhammad v. Mayfield conclusively demonstrates that those secondary grievances could not have exhausted Ms. Prouse's excessive force claim as a matter of law. In fact, the two grievances that were at issue in the Muhammad case are more closely related to the legal issue in that case than Ms. Prouse's secondary grievances are in this case. Her underlying legal claim is for excessive force. Ms. Prouse concedes that those subsequent or secondary grievances are about three decidedly different issues. One about video surveillance, the second about a disciplinary matter, and the third an allegation that officers were incorrectly using the ADC's electronic offender management system to store falsified documents. None of those grievances, even if they were properly exhausted, could exhaust her specific excessive force claim. And so this court, even if it found that those grievances were properly exhausted, should still dismiss Ms. Prouse's case on that basis because they don't exhaust the excessive force issue. Turning next to unavailability, for that reason, because the secondary grievances are wholly unrelated to her underlying legal claim, this court does not need to determine whether or not the ADC's grievance procedure is unavailable. But even if the court takes that issue up, it is clear that the ADC's grievance procedure is available. First, there is no allegation or no demonstration in the record, excuse me, that any ADC official provided misinformation to Ms. Prouse about how to navigate the grievance procedure. The grievance procedure is designed to permit inmates to raise specific issues to the ADC, identify those specific issues, the personnel involved, and there is a mechanism for inmates to receive review of those issues on the merits. The grievance procedure is not so opaque or confusing that no inmate can navigate the grievance procedure. In fact, as my friend noted, the record indicates that Ms. Prouse was able to successfully navigate the grievance procedure, at least partially, at the unit level with respect to grievance 1969. The problem, in this case, is not whether or not the ADC's grievance procedure is so confusing that she could not perfect an appeal she could have. And the record demonstrates that she attempted that a second time on August 28th. So the issue here isn't that the grievance procedure is so confusing that she couldn't figure it out. The issue here is that there is no material or disputed fact about whether or not Ms. Prouse improperly took those steps on August 27th. With the time that I have remaining, I want to distinguish this case from Boyd. Ms. Prouse relies heavily on this court's decision in Boyd, and your honors have asked, was it sufficient for Ms. Prouse to just and respectfully, the appellee's position is no. This case is distinguishable from Boyd because in that case, the inmate specifically maintained in a sworn statement that he had provided all of the necessary attachments. In response, the affidavit from the grievance administrator just concluded that the inmate had not complied with the ADC's grievance procedure. That is not the issue we have here. Here, in addition to the ADC administrator's affidavit, there are documents in the record that demonstrate that the ADC did not receive a completely exhaustive grievance on the issue of excessive force pursuant to the ADC's grievance procedure on August the 27th. And so this case is distinguishable because there are documents in the record that support the grievance officer's statement or declaration or sworn statements that Ms. Prouse failed to exhaust her administrative remedies. And I see that I'm running out of time. If there are no questions on behalf of the appellees, we would request that this court affirm the dismissal of Ms. Prouse's 1983 claim and affirm the district court's decision to grant summary judgment on the issue of exhaustion in favor of the ADC defendants. Thank you, Your Honor. Thank you, Ms. Hodge-Guest. Mr. Van Ostrom, your rebuttal. May it please the court? This court just asked, couldn't there be a difference between the date that ADC actually received the perfected appeal and the date that it was stamped? The answer is absolutely, especially when the record is filled with additional documentary evidence that supports that version of events. We've already talked about Ms. Prouse's sworn statement. We've talked about the date on the form itself. The 822 document, the carbon copy that was seeking a status update, that statement, no response doesn't make sense unless Ms. Prouse had already submitted her perfected appeal. So this record is full of evidence that undercuts the notion that this appeal was first received on 8-27 or that the perfected appeal was received on 8-28. And instead there is every indication in the record that this appeal was appropriately and timely submitted, but that ADC nonetheless decided to reject the carbon copy form before rejecting the perfected appeal that it received first. Additionally, it's not even clear that received or the date of receipt is actually the policy. All the inmate procedure guidelines dictate is that the inmate has to appeal within five days. So reliance simply on when the documents were received would not be appropriate as a matter of law in any case. And then finally, I want to turn briefly to the additional grievances that were submitted. Respectfully, opposing counsel just can't have it both ways. They can't reject these additional grievances and say that they were duplicative and then argue to this court that they don't support exhaustion of the claims raised in the petition. That doesn't make any sense. They can't have it both ways. For all these reasons, this record is replete with evidence that Ms. Prouse successfully perfected her appeal. We urge this court to reverse. Thank you. Very well, counsel. We appreciate your appearance and briefing and arguments today. Case will be submitted and decided in due course. Thank you, Your Honor. You're welcome to stick around, but you may also be dismissed. Thank you. Ms. Rudolph, would you announce our second case?